IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DEMETRIUS LLOYD,                    :    CIVIL ACTION
                                    :
          Petitioner,               :
                                    :
     v.                             :    NO. 11-4306
                                    :
TABB BICKELL                        :
et al.,                             :
                                    :
          Respondents.              :
_____   :

Arnold C. Rapoport,
United States Magistrate Judge

## REPORT AND RECOMMENDATION

Demetrius Lloyd, who is serving a life sentence plus a term
of years following his conviction in the Court of Common Pleas
of Philadelphia for first degree murder, possession of an
instrument of crime, and violation of the Uniform Firearms Act,
has filed a petition for writ of habeas corpus.  I recommend
that the petition be dismissed without an evidentiary hearing
and with no certificate of appealability granted.

## I.    FACTS AND PROCEDURAL HISTORY[1]

On the night of August 4, 2002, Lloyd was driven to the
home of his girlfriend, Clea Wood, to pick her up for the

_____

[1] The facts and procedural history are taken from the opinion of the trial
court filed in response to Lloyd's direct appeal (see Resp. Ex. B), the
opinion of the Pennsylvania Superior Court deciding the direct appeal, (see
Resp. Ex. A), and the trial record.

evening. (NT 6/15/04 at 107-09.) The driver of the white Oldsmobile in which Lloyd was a passenger was the decedent, Junior Tyndale. (NT 6/16/04 at 167.) As Wood approached the vehicle, she observed that Tyndale and Lloyd were engaged in an argument. (Id. at 109.) The argument continued as Tyndale drove off, with Lloyd complaining about Tyndale's driving and telling him he wanted the car to himself. (Id.)

Tyndale made another stop to pick up Lloyd's friend Bryant "Briz" Huff. (Id.) Upon arriving at Huff's home, the trio was informed that he was not home, but could be found around the corner. (Id. at 174; NT 6/15/04 at 111.) They found him at the corner of 22nd and Diamond Streets. (NT 6/16/04 at 35, 174.) Lloyd got out of the car to speak with Huff, but Huff was not ready to leave. (Id.) Huff testified that Lloyd seemed agitated. (Id. at 36.) Lloyd got back in and Tyndale drove the car to Huff's house to wait for him. (Id. at 175; NT 6/15/04 at 112.) Once at Huff's house, Lloyd and Tyndale went inside, leaving Wood in the vehicle. (NT 6/15/04 at 113; NT 6/16/04 at 175.)

Tyndale returned to the car a few minutes later, snatched the keys out of the ignition and began to walk away. (NT 6/15/04 at 113-14.) Lloyd followed him and, Wood testified, the

two began to push each other.  (NT 6/15/04 at 114.)  She testified that she heard a gunshot, saw a flash in between the two men, and saw Tyndale fall to the ground.  (<u>Id.</u> at 114-16.) She saw Lloyd then stand over Tyndale and shoot his gun downward three or four times.  (<u>Id.</u> at 116.)

After witnessing the shooting, Wood became frightened, exited the vehicle, and walked away from the scene.  (<u>Id.</u> at 117.)  She testified that Lloyd ran past her and screamed "Oh, my God" while taking off his shirt.  (<u>Id.</u> at 118.)  Wood noticed that she did not have her cell phone, so she went to a pay phone, called her own number, and Lloyd answered.  (<u>Id.</u> at 119.) Shortly thereafter, a male whom Wood did not know, walked up to her and returned her cell phone.  (<u>Id.</u> at 120.)  Wood summoned a taxi to go home but received a call from one of Lloyd's friends, who asked her to meet all of them at a restaurant on Delaware Avenue.  (<u>Id.</u> at 120-22.)

Wood testified that, at the restaurant, Lloyd's friends questioned her about what happened.  Lloyd asked Wood if she felt disrespected by Tyndale.  Wood, paraphrasing Lloyd's statement, told the jury that he said he shot Tyndale because otherwise Tyndale would have done "something to me first."  (<u>Id.</u> at 124.)

Wood, who continued to date Lloyd for some months after the incident, was interviewed by homicide detectives and told them what she had seen and heard on the night in question. (Id. at 125-26.) After she broke off her relationship with Lloyd, he wrote her a number of letters from prison that she felt contained threats to her about her cooperation with the murder investigation. (Id. at 126-128.) The letters were introduced into evidence by the prosecution.

Philadelphia Police Officer Lisa Mychack was on patrol in the neighborhood with her partner, Officer John McLaughlin on the night of the shooting. They both heard the gunshots and drove around the corner where they saw Tyndale lying on the pavement. They observed that he had been shot in the face and neck. (NT 6/14/04 at 74-75.) Tyndale was transported to Temple Hospital where he died two days later. (NT 6/15/04 at 54.) Police recovered a pack of cigarettes and a set of car keys, which were later identified as belonging to the Oldsmobile. (NT 6/14/04 at 75.) No weapons or ballistics were found at the scene. (Id. at 76.)

Introduced into evidence at trial was a photograph of Lloyd pointing a revolver at a stuffed bear. (NT 6/15/04 at 137.) The picture was taken at a hotel room in Phoenixville

approximately two months prior to the shooting. (Id.) Police
Officer James Kwong, a firearms and ballistics expert, testified
that the handgun in the picture was a Smith and Wesson military
and police model .38 Special revolver. (NT 6/14/04 at 145.)
Kwong examined a bullet jacket, a bullet specimen and two lead
fragments taken from Tyndale's body. This examination, coupled
with the fact that no ballistics were found at the scene,
enabled Kwong to conclude that the bullets involved in Tyndale's
death came from a .38 or .357 caliber revolver. (Id. at 137-
141.) Kwong testified that the gun depicted in the photograph
was consistent with the weapon used to kill Tyndale, but because
he did not have it to examine and test, he could not say for
certain the gun pictured was in fact the murder weapon. (Id. at
147-48.)

Lloyd testified in his own defense. On the night of the
incident, while Tyndale drove him from Phoenixville to
Philadelphia, Tyndale was stopped by the police for speeding.
(NT 6/16/04 at 167-68.) Tyndale had no driver's license and the
police searched the vehicle. (Id. at 168-69.) Lloyd told the
jury that no weapons were found in the search. (Id.) Once at
Huff's house, Lloyd stated that he saw another man pull up in a
blue car and shoot Tyndale. (NT 6/16/04 at 176.) He described

5

the assailant as brown-skinned, wearing a white tee shirt, with no facial hair. (Id. at 176-77.) He testified that he checked to see if Tyndale was alive and ran away because he was in shock and in fear for his own life. (Id. at 178.) He told the jury that he knew that people were out to get Tyndale. (Id. at 185.) Despite the photograph, on cross-examination Lloyd denied that he carried a gun. (Id. at 193-98.)

Also called to testify for the defense was Derrel Johnson. Johnson told the jury he was in a "Chinese store" across the street from the crime scene. (Id. at 93.) He saw a blue Oldsmobile Delta double parked on the street. (Id. at 98-99.) He saw a man pointing down and heard a gunshot, saw the man walk to the front of the blue car and get in, then the car backed up Diamond Street. (Id. at 99-100.) He gave the police a description of the perpetrator as 5'11" tall, clean-shaven, balding, and wearing a white tee shirt. (Id. at 102.) He told the jury that Lloyd was not the shooter. (Id. at 106.) On cross-examination, Johnson was impeached with the statement he gave to police following the shooting. In his statement, Johnson stated he could not see where the assailant went after the shooting. (Id. at 140-42.) He also did not mention in his

statement that the assailant was 5'11" tall, clean shaven and bald. (Id. at 147-48.)

Lloyd was found guilty on all charges and was sentenced to life in prison, as well as consecutive sentences of two and one half to five years for possessing an instrument of crime, and six to twelve years for carrying a firearm without a license. (Resp. Ex. A at 6.) The state court record shows that, following the conviction, Lloyd filed a post-verdict motion challenging the weight and sufficiency of the evidence, which was denied on July 6, 2004. Counsel also filed a timely notice of appeal. In his appeal, Lloyd raised two issues of trial court error to the Pennsylvania Superior Court: (1) the trial court erred in failing to sustain objections to misstatements of fact in the prosecutor's closing argument; and (2) the trial court erred when it permitted the Commonwealth to introduce the photograph showing Lloyd holding a gun to the head of a bear because it was unduly prejudicial and depicted him engaged in unrelated criminal activity. (Resp. Ex. A, D.) In an opinion filed August 12, 2005, the Superior Court rejected these arguments. (Id.) The Pennsylvania Supreme Court denied his petition for allowance of appeal on April 4, 2006.

Lloyd filed a timely petition pursuant to the Pennsylvania Post-Conviction Relief Act, counsel was appointed and filed an amended petition asserting the following claims: (1) prosecutorial misconduct arising from the prosecutor's opening speech where she asserted that she would present a witness named Antonio Pittman to testify that Lloyd admitted to him that he killed Tyndale, but then never actually called the witness; and a derivative ineffective assistance of counsel claim for failing to move for a mistrial or request a cautionary instruction regarding this failure; (2) ineffective assistance of trial counsel for (a) failing to move to strike Wood's testimony paraphrasing what Lloyd purportedly told her after the trial court instructed the witness not to paraphrase; (b) for failing to subpoena the state troopers that stopped and searched Tyndale's vehicle and determined that there were no weapons in the vehicle; (c) for failing to object to prosecutorial misconduct when the prosecutor stated in her closing argument that Lloyd no longer enjoyed the presumption of innocence; and (3) trial court error in failing to give a requested "mere presence" charge; and a derivative claim of ineffective assistance of trial counsel for failing to preserve this error. (Resp. Ex. E at Att. RR2.) The PCRA court dismissed the petition without an evidentiary hearing on November 19, 2008,

and, after Lloyd filed a notice of appeal, issued an opinion on June 23, 2009, setting forth its rationale for the dismissal. (Resp. Ex. B.)

On appeal, Lloyd raised the same issues rejected by the PCRA court. He also raised new claims that PCRA counsel was ineffective for failing to preserve as issues that prior counsel was ineffective for failing to (1) raise a claim on direct appeal pertaining to the trial court's improper admission of "prior bad acts" evidence; (2) object, request a mistrial, and raise a claim on direct appeal regarding the prosecutor's improper statement of her personal belief that Lloyd was guilty; and (3) investigate and call witness Antonio Pittman. In an opinion filed on August 25, 2010, the Superior Court affirmed the dismissal of the PCRA petition. (Resp. Ex. C.)

Lloyd filed the instant counseled petition for habeas relief on June 30, 2011. In his petition he asserts claims that (1) the trial court violated his due process rights when it failed to sustain objections to misstatements of fact by the prosecutor during her closing argument; (2) the trial court violated his due process rights when it permitted the Commonwealth to introduce the photograph depicting Lloyd with a gun; (3) ineffective assistance of counsel for failing to

9

request a mistrial or cautionary instruction regarding the prosecutor's mention of Antonio Pittman; (4) ineffective assistance of counsel for failing to move to strike the paraphrased summary of what Lloyd purportedly told Clea Wood after the trial court instructed her not to paraphrase; (5) ineffective assistance of counsel for failing to subpoena the state troopers who stopped and searched Tyndale's vehicle and failed to find a weapon; (6) ineffective assistance of counsel for failing to object to the prosecutor's closing argument in which she stated that Lloyd no longer enjoyed the presumption of innocence; (7) ineffective assistance of counsel for failing to object and preserve for appeal trial court error in refusing to give a requested "mere presence" instruction; (8) the PCRA court violated his due process and ex post facto rights when it held that three claims were waived due to PCRA counsel's ineffectiveness in failing to incorporate them in the initial PCRA petition, those claims being (a) an ineffective assistance of counsel claim for failing to raise the improper admission of the "prior bad act" evidence, (b) an ineffective assistance of counsel claim for failing to object, request a mistrial and preserve for appeal the prosecutor's improper statement of her personal belief that Lloyd was guilty, and (c) an ineffective assistance of counsel claim for failing to raise and preserve a

claim that trial and direct appeals counsel were ineffective for failing to call Antonio Pittman.

## II.    STANDARD OF REVIEW

I analyze these claims according to the precepts of Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) which altered habeas review of state convictions brought under § 2254.  Under AEDPA, a petitioner must demonstrate that the state court's adjudication of the merits "resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States."  See Penry v. Johnson, 532 U.S. 782, 792-92 (2001) (explaining two-prong standard); Williams v. Taylor, 529 U.S. 362, 403-04 (2000) (same).  Additionally, state court findings of fact are to be presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1).  This presumption applies even if the finding was made by a state court of appeals rather than by the state trial court. Bragg v. Galaza, 242 F.3d 1082, 1087 (9th Cir.), amended, 253 F.3d 1150 (9th Cir. 2001).

The Supreme Court has said that "a state court decision will be 'contrary to' our clearly established precedent if the state court either 'applies a rule that contradicts the governing law

set forth in our cases,' or 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'" Penry, 532 U.S. at 792 (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision is an unreasonable application of the Supreme Court's precedent if the court "correctly identifies the governing legal rule but applies it unreasonably to the facts" of the case. Id. AEDPA's general rule of deference applies even if the state court does not cite to the applicable Supreme Court decisions, or even demonstrate an awareness thereof, so long as neither the reasoning nor the result of the state court decision contradicts them. Early v. Packer, 537 U.S. 3, 8 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002).

## III.  **DISCUSSION**

### a.    The Due Process Claims

Lloyd's first two claims assert violations of his federal due process rights arising from (1) the trial court's failure to sustain objections to misstatements of fact by the prosecutor during her closing argument, and (2) the trial court's permitting the Commonwealth to introduce the photograph depicting Lloyd with a gun.  I recommend that these two claims

12

are procedurally defaulted with no showing of cause and prejudice or miscarriage of justice. I also recommend that they are meritless.

1.     Exhaustion, Fair Presentation and Procedural
       Default

In order to satisfy the exhaustion requirement contained in 28 U.S.C. § 2254(b)(1), a same claim raised in the federal habeas claim must have been "'fairly presented' to the state courts. . . . This means that a petitioner must 'present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.'" Bronshtein v. Horn, 404 F.3d 700, 725 (3d Cir. 2005) (internal citations omitted). A claim is not fairly presented if the state court "must read beyond a petition or brief . . . that does not alert it to the presence of a federal claim." Baldwin v. Reese, 541 U.S. 27, 32 (2004). Mere similarity of the federal and state issues is insufficient to prove exhaustion. Duncan v. Henry, 513 U.S. 364, 366 (1995). The relevant inquiry is whether the petitioner presented in state courts the legal theory and supporting facts asserted in the federal habeas petition. Nara v. Frank, 488 F.3d 187, 198 (3d Cir. 2007); Keller v. Larkins, 251 F.3d 408, 413 (3d Cir. 2001).

I recommend that Lloyd never fairly presented the state courts with an argument that his allegations of trial court error constituted federal due process violations. In his direct appeal brief, Lloyd raised only claims under state law that the trial court erred in making evidentiary rulings. (See Resp. Ex. D. at 1; 6-10.) He never cited the Due Process Clause, nor did he cite cases construing the Due Process Clause, and nothing in his brief can be viewed as having reasonably alerted the Superior Court to the presence of any federal claims. I recommend that Lloyd's state law evidentiary claims that the trial court erred when it failed to sustain objections to the prosecutor's closing argument and when it admitted the photograph are entirely different in their factual bases and legal theories from the federal constitutional claims he attempts to raise in his habeas petition.

Accordingly, Lloyd's failure to fairly present his due process claims render them unexhausted and procedurally defaulted. Ordinarily, federal habeas review is barred if petitioner has procedurally defaulted. <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for

14

presenting his federal claims has deprived the state courts of
an opportunity to address those claims in the first instance."
<u>Id</u>. at 731-732.  To be beyond federal review, the procedural
default at issue must rest on "adequate and independent" state
law grounds. <u>Johnson v. Pinchak</u>, 392 F.3d 551, 556 (3d Cir.
2004) (citing <u>Harris v. Reed</u>, 489 U.S. 255, 262 (1989)).  "[T]he
state rule must have been announced prior to its application in
the petitioner's case and must have been 'firmly established and
regularly followed.'" <u>Abu-Jamal v. Horn</u>, 520 F.3d 272, 287 (3d
Cir. 2008) (quoting <u>Fahy v. Horn</u>, 516 F.3d 169, 187 (3d Cir.
2008) (quoting <u>Ford v. Georgia</u>, 498 U.S. 411, 423-24 (1991))).
The default will be excused if petitioner can demonstrate cause
and prejudice or that a failure to consider his claims will
result in a miscarriage of justice.  <u>Coleman</u>, 501 U.S. at 750.

Although represented by counsel, Lloyd did not acknowledge
or address his failure to fairly present the federal
constitutional theory of his claims in his Petition or in the
Memorandum of Law he filed with it.  He also has failed to
submit any response to the arguments the Commonwealth raised
that his due process claims are procedurally defaulted.[2]  Because

---

[2] Lloyd has submitted supplemental letter briefs concerning the United States
Supreme Court's recent decision in <u>Martinez v. Ryan</u>, which I discuss *infra*.

he has made no showing regarding cause and prejudice or miscarriage of justice, I recommend that the two due process claims must be dismissed.

### 2. Merits of the Due Process Claims

I also recommend that, in addition to being procedurally defaulted, the due process claims based upon trial court error have no merit. For purposes of this discussion, I address the claims as if Lloyd sought direct appeal review of direct claims of prosecutorial misconduct, and repeats the same claims here.

### A. The Prosecutor's Alleged Factual Misstatements During Closing Argument

In the "trial-court-error-direct-appeal" issue actually raised before the Pennsylvania Superior Court, and upon which these due process/prosecutorial misconduct claims are based, Lloyd argued to that the prosecutor made two misstatements of facts. The first concerns defense witness Derrel Johnson's and Lloyd's own testimonies. Regarding Johnson, in her closing speech, the prosecutor argued to the jury that "He [Johnson] was at the corner and he didn't even know until later on that the defendant was firing at a person." (Resp. Ex. A. at 7 (quoting NT 6/17/04 at 93).) Lloyd objected, claiming that the prosecutor was misstating the facts. The trial court overruled

the objection stating, "[c]ounsel may make reference to what was said but it is the jury's recollection that ultimately counts." (NT 6/17/04 at 93.)  In deciding the appeal, the Superior Court first quoted Johnson's trial testimony that he "thought [the shooter] was shooting at the step," and only after hearing another person at the scene ask "is he dead" did he ask "was somebody under there" and saw that a body was on the ground. (Resp. Ex. A. at 7-8 (quoting NT 6/16/04 at 99-101).)  Based upon this testimony, the Superior Court found that the prosecutor did not misstate Johnson's testimony when she argued to the jury that Johnson did not know until later that the shooter was firing at a person; rather she accurately summarized what Johnson had said and her statement could have been reasonably inferred from the testimony.  The Superior Court thus concluded that the trial court did not abuse its discretion when it overruled counsel's objection.  (Id.)

The Superior Court's finding that the prosecutor accurately summarized Johnson's testimony is a factual finding entitled to the presumption of correctness.  See 28 U.S.C. 2254(e)(1).  It was incumbent upon Lloyd to rebut that presumption with clear and convincing evidence, but he has failed to offer anything to support his burden.  Indeed, having reviewed the entirety of

Johnson's trial testimony and the prosecutor's closing argument, I recommend that the Superior Court's conclusion is indubitably correct. Thus there can be no habeas claim based upon this portion of the prosecutor's argument, regardless whether that claim is framed as a due process violation, prosecutorial misconduct, or some other federal claim based upon the state court's resolution of the state law evidentiary issue.

The other misstatement concerned the prosecutor's description of events following the murder, when she misspoke and inaccurately told the jury that Lloyd gave a gun to Wood, rather than her cell phone. She told the jury in her closing argument that

> then they have to all collect themselves and he [Lloyd] went through great pains to tell you, oh well, actually, I got the cab with Clea. Actually, Clea took a cab over to me. I handed her the gun and then Clea then leaves and comes back in a cab again and then they take a cab to the River Café.

(NT 6/16/04 at 180-81.) Lloyd argues that this misstatement "did what the evidence could not: It placed a gun in the Petitioner's hands only moments after the shooting. It also improperly presumed consciousness of guilt to the jury." (Pet. Mem. at 7.) He also contends that the trial court's failure to clearly explain to the jury that the closing arguments of

counsel were not evidence and were not to be treated as such permitted the jury to assume that the prosecutor's misstatement was indeed accurate.  (Id. at 7-8.)

The Supreme Court law governing Lloyd's claim — as I construe it — that the prosecutor's misstatements of fact during her closing argument amounts to misconduct, requires that a petitioner show that a prosecutor's actions "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974).  For due process to have been offended, "the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" Greer v. Miller, 483 U.S. 756, 765 (1987) (citing United States v. Bagley, 473 U.S. 667, 676 (1985) (quoting United States v. Agurs, 427 U.S. 97, 108 (1976))).  The United States Court of Appeals for the Third Circuit has held as a matter of law, and so I recommend, that the Pennsylvania standard for prosecutorial misconduct applied here is not contrary to Supreme Court law. See Fahy v. Horn, 516 F.3d 169, 198-99 (3d Cir. 2008) (holding that Pennsylvania state law cases on prosecutorial misconduct "articulate[d] the proper standard" of Supreme Court law).

I also recommend that the state courts' application of that law was not unreasonable. The Superior Court recognized that the prosecutor erroneously referred to the exchange of a "gun" instead of a cell phone in her closing, but held that

> this one-time misstatement made in passing did not so prejudice the jury as to prevent a fair trial. Indeed, no case was ever made that Appellant handed a gun to Wood at the crime scene. The jury is presumed to have listened to the case presented, which specifically included both Appellant's and Commonwealth witness Wood's testimony that a cell phone, and not a gun, was exchanged. There was, therefore, no evidentiary reason for the jury to doubt or confuse this point.

(Resp. Ex. A at 9.) I recommend that Superior Court's determination — that the misstatement was insignificant because it was a one-time mistake made in passing — reasonably applied Darden and Greer to the facts of the case. The record establishes that the Commonwealth clearly acknowledged that it never produced the murder weapon. (NT 6/17/04 at 86-87.) While Lloyd argues that this misstatement "did what the evidence could not" by placing a gun in the his hands at the scene of the shooting, the argument ignores the fact that Wood's testimony not only placed a gun in his hands, it established Lloyd as the murderer. Given the strength of the Commonwealth's evidence,

the Superior Court's determination that the prosecutor's one-time slip of tongue was not significant was clearly reasonable.

Moreover, Lloyd's assertion that the trial court did not clearly explain to the jury that the closing arguments of counsel were not evidence, is utterly belied by the record. The trial court in fact instructed the jury that

> The speeches that you heard of the lawyers, they are not part of the evidence and you should not consider them as such. However, in deciding the case, you should carefully consider what evidence was presented in light of the various reasons and arguments which the lawyers offered. . . . You should be guided by the lawyers' arguments to the extent they are supported by the evidence and insofar as they aid you in applying your own reason and your own common sense. You are not required to accept the arguments of either lawyer.

(NT 6/17/04 at 140-41.) The Superior Court's conclusion that this instruction "negat[ed] any prejudicial effect the misstatement may have had," (Resp. Ex. A at 9-10), reasonably applied the Supreme Court's holding in Greer that "the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'"

        B.     The Prosecutor's Introduction of the

               Photograph

Lloyd next raises a due process claim that the prosecutor's introduction of the photograph showing him holding a gun to the head of a stuffed bear was improper because the Commonwealth was unable to establish through ballistics expert testimony that the gun shown in the picture was the gun used in the murder. While he mentions the Due Process Clause as the basis for his claim, he asserts only that his rights were violated because the evidence was more prejudicial than probative because it inferred that he was "arrogant and cavalier." (Pet. Mem. at 9-10.) He also argues that the photograph portrayed him engaging in uncharged criminal activity or prior bad acts. I recommend that, even if he had pursued and exhausted a due process claim in state court, the arguments Lloyd assert here do not raise issues that are cognizable on habeas review.

A federal habeas court is bound by state court determinations of state law and has no authority to review it. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (holding "the Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules" quoting Marshall v. Lonberger, 459 U.S. 422, 438, n. 6 (1983)); Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including

one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"); Swarthout v. Cook, ___ U.S. ___, 131 S. Ct. 859, 861 (2011); Warren v. Kyler, 422 F.3d 132, 137 (3d Cir.2005) (state court determinations of state law issues are not properly before federal court on habeas review). Because the ruling on the admissibility of the photograph evidence is not properly the subject of habeas relief, I recommend that the claim must be dismissed.

  b.    The Ineffective Assistance of Counsel Claims

Lloyd raises four claims of ineffective assistance of trial counsel. The clearly established Supreme Court law governing claims of ineffective assistance of counsel is Strickland v. Washington, 466 U.S. 668, 687 (1984), wherein the Court established a two-pronged test to evaluate Sixth Amendment claims of ineffective assistance of counsel. An individual making such a claim must show: (1) that "counsel's performance was deficient, which is measured by "reasonableness under prevailing professional norms;" and (2) that counsel's "deficient performance prejudiced the defense." Id. at 687-90.

The Pennsylvania standard for ineffective assistance, i.e., that to show ineffective assistance a petitioner must show that the underlying claim has merit, that counsel had no reasonable

basis for his conduct, and resulting prejudice (meaning that the outcome of the proceeding would have been different) see Commonwealth v. Todaro, 701 A.2d 1343, 1346 (1997), is materially identical to the test enunciated in Strickland. See Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000). Therefore, "the appropriate inquiry is whether the Pennsylvania courts' application of Strickland to [petitioner's] ineffectiveness claim was objectively unreasonable, i.e., the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under Strickland." Werts, 228 F.3d at 204.

>    1.    Counsel's Failure to Object to the Prosecutor's
>           Mention of Antonio Pittman in her Opening and
>           Closing Statements

Lloyd argues that trial counsel was constitutionally ineffective for failing to object or move for a mistrial when (1) the prosecutor told the jury in her opening statement that she expected to present the testimony of Lloyd's friend Antonio Pittman, who would tell the jury that Lloyd alleged confessed to the murder, (2) she did not actually call Pittman to testify, but (3) mentioned him again in her closing argument. In her opening statement, the prosecutor told the jury

We are also going to call a man named Antonio
Pittman, and he told the police, he's also a friend
of the defendant's, goes by the name of T, that he
was at Dave & Buster's this evening and he received
a phone call from the defendant, and during that
phone call the defendant tells him, tells him that
he shot [Tyndale] in the face, that he thinks he's
still alive and tries to explain.

I don't know what Pittman is going to come and
try to say in this courtroom when he's called, but
I know what he told the police when he was
interviewed.

(NT 6/14/04 at 63.)  In her closing, the prosecutor told the

jury

But I submit to you, *by his own words to his own
friends*, by his conduct, by him writing the letter
by this photo, by his testimony.  I submit to you
that the presumption of innocence is no more.

(NT 6/17/04 at 104 (emphasis added).)[3]  Despite having failed to

call Pittman as a witness, Lloyd argues that the prosecutor's

mention of "*his own friends*" in her closing argument was a

reference to Pittman, for which counsel was ineffective for

failing to object or seek a mistrial.  (Pet. Mem. at 11.)

I recommend that this issue was only partly exhausted

through Lloyd's PCRA petition.  In his appellate brief to the

---

[3] The prosecutor's mention of the presumption of innocence is the subject of
an additional claim for habeas relief that I discuss separately, *infra*.

Superior Court on PCRA appeal, Lloyd argued only that his

counsel was ineffective for failing to object to the

prosecutor's opening speech, not to her closing argument. (See

Resp. Ex. C at 12-16 (referencing only the prosecutor's

mentioning of Pittman in her opening to the jury).)

Nonetheless, I will discuss the merits of the entire issue.

    In addressing the prosecutor's mentioning of Pittman, the

Superior Court held that, because the prosecutor did not act

improperly in telling the jury about Pittman, counsel could not

have been ineffective in failing to object:

> The prosecutor's statements were not mere
> assertions, but were based on a signed statement
> that Pittman gave to police, implicating Appellant
> in the crime. . . . There is no evidence of record
> that the Commonwealth had no intention of calling
> Pittman.  On the contrary, on the second day of
> trial, the prosecutor again showed she expected
> Pittman to testify saying "when Antonio Pittman or
> Bryan Huff testifies, I do expect that it will come
> out that Tyndale was the driver and that they were
> involved in drug selling."  . . . .  This statement
> was not improper as it was based on evidence and
> the prosecutor intended on having Pittman testify.
> Moreover, this statement did not render the jury
> incapable of objective judgment.  See Commonwealth
> v. Dehart, 539 Pa. 5, 22, 650 A.2d 38, 46 (1994)
> (finding counsel was not ineffective even assuming
> the D.A.'s opening statement was improper for
> referencing "shotgun blasts" when the witness could
> not identify what kind of shots they heard, since

26

> it could not have affected the jury's objectivity
> and does not entitle Appellant to relief).

(Resp. Ex. C at 8.)

I recommend that nothing in this analysis of the prosecutor's opening statement unreasonably applied first prong of Strickland. Because the state courts determined that any objection by defense counsel would have been baseless under state law, counsel cannot be deemed to have been ineffective for failing to raise it. See Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) (failure to raise non-meritorious issues does not constitute ineffective assistance of counsel); Thomas v. United States, 951 F.2d 902, 904 (8th Cir. 1991) (defense counsel not ineffective for failing to raise meritless objections); Sweet v. Tennis, Civ. A. 07-5349, 2008 WL 4372851 (E.D. Pa. Aug. 18, 2008) (same). Accordingly, the state court's adjudication of the issue was not an unreasonable application of Supreme Court law.

As noted, Lloyd never exhausted his claim that counsel's failure to object to the prosecutor's closing argument also constituted ineffective assistance. Had such a claim been exhausted, I would recommend that it too arguably lacks any basis. Lloyd focuses upon the prosecutor's use of the phrase

"*by his own words to his own friends*" as indicating that the
prosecutor was referring to Pittman and improperly disclosed to
the jury highly prejudicial hearsay. (Pet. Mem. at 11.) I
recommend that this assertion is wholly speculative. No such
inference is clear on the record since the prosecutor makes no
reference to Pittman in her closing and Lloyd offers nothing to
substantiate his claim that the prosecutor was referring to
Pittman. Indeed, Lloyd's assertion ignores Wood's testimony
that she and Lloyd met several of Lloyd's friends at a bar after
the shooting occurred, discussed the events of that night, and
Lloyd admitted to his friends that he killed Tyndale, albeit in
self-defense. The prosecutor's use of the phrase "*by his own
words to his own friends*" could reasonably refer to this
evidence, rather than to what Pittman might have stated had he
been called as a witness. Accordingly, counsel cannot be
faulted for failing to raise an objection to the statement since
any objection would have been meritless.

> 2.  Counsel's Failure to Move to Strike Paraphrased
>     Summary

Repeating a claim he exhausted in his PCRA petition, Lloyd
asserts that trial counsel was constitutionally ineffective when
he failed to move to strike the paraphrased summary of what

Lloyd purportedly told Clea Wood, after the trial court instructed the witness not to paraphrase. In discussing the conversation Wood had with Lloyd after the shooting, the following occurred before the jury:

> Q. Did you have any conversation with the defendant that evening?
>
> A. I was just talking to him about what happened.
>
> Q. What did you say specifically?
>
> A. Why did you do that [i.e., kill Tyndale]?
>
> Q. And did he say anything in response?
>
> A. He was like — he was just talking about how if he didn't do that, then he would have did something to me first or that's what he was saying.
>
> THE COURT: Well, you can only testify as to what you recollect the defendant specifically said. You can't paraphrase it or summarize it. So there it is.
>
> You may proceed. But you can say — you said, your testimony, why did you do it. Do you have a recollection of what his specific response was?
>
> THE WITNESS: No.
>
> THE COURT: You may proceed. Go ahead.

(NT 6/15/04 at 123-24.) Lloyd argued to the Pennsylvania Superior Court that, since Wood could only summarize what he allegedly told her and could not remember what he had actually

29

said, the testimony was improper, he could not effectively confront it on cross-examination, and he suffered prejudice when counsel was ineffective in failing to move to have it stricken. (Resp. Ex. D. at 16-18.)  The Superior Court rejected these arguments as baseless, considering the record of defense counsel's thirty pages of cross-examination of Wood, during which counsel fully examined Wood about the alleged statement Lloyd made after the shooting to impeach her recollection.  The Court also noted, quoting the trial judge, that (1) the same witness unequivocally identified Lloyd as the shooter and (2) the statement that Lloyd killed the decedent before the decedent had the opportunity to kill him, might have served to establish that he acted in self-defense.  (Resp. Ex. C at 10-11.)  For these reasons, the Superior Court concluded that counsel's failure to strike the paraphrased statement could not constitute ineffective assistance of counsel.

I recommend that nothing in this analysis unreasonably applied either prong of Strickland.  Because the state courts determined that any objection by defense counsel would have been baseless, counsel cannot be deemed to have been ineffective for failing to raise it.  With regard to prejudice, Lloyd cannot show that the inclusion of the paraphrased statement negatively

affected his defense.  The trial judge's insight that the
testimony could only have helped Lloyd – since it provided the
basis for a self-defense argument – seems unquestionable.

###            3.      Failure to Subpoena the State Troopers

Lloyd's next claim of ineffective assistance arises from
trial counsel's failure to subpoena the state troopers who
stopped and searched Tyndale's vehicle and failed to find a
weapon.  He argues that trial counsel was aware of the vehicle
search and that no weapons had been found; despite this,
counsel, who had asked the Commonwealth to produce the Incident
Report generated from the stop, failed to introduce the Report
into evidence or call the state troopers who searched the
vehicle, presumably to testify that no weapons were found.

In addressing this claim, the Superior Court, applying the
Pennsylvania standard for ineffective assistance of counsel
claims involving the failure to call a witness,[4] held that

> Appellant did not demonstrate that the police were
> available or willing to testify for the defense; in

---

[4]  See Commonwealth v. Washington, 927 A.2d 586, 599 (2007) (holding that to
establish that counsel was ineffective for failing to call a witness, it must
be established that (1) the witness existed; (2) the witness was available to
testify; (3) counsel knew or should have known of the existence of the
witness; (4) the witness was willing to testify; and (5) the absence of the
witness's testimony was so prejudicial as to have denied defendant a fair
trial).

> fact, he did not even identify them. Also
> Appellant failed to show how the absence of their
> testimony was so prejudicial as to have denied him
> a fair trial. Even if the police that pulled him
> over were subpoenaed and offered testimony
> consistent with that of Appellant's, such testimony
> would not have changed the verdict. Testimony that
> Appellant did not have a gun at the time he was
> pulled over does not prove he did not have a gun at
> the time the victim was killed. Appellant, thus,
> failed to plead that his conviction or sentence
> resulted from ineffective assistance of counsel
> that so undermined the truth-determining process
> that no reliable adjudication of guilt or innocence
> could have taken place.

(Resp. Ex. C at 12-13.) I recommend that this holding did not

unreasonably apply Strickland.

Counsel's failure to investigate or call potential witnesses

can amount to ineffective assistance of counsel. United States

v. Gray, 878 F.2d 702 (3d Cir. 1989). This principle is derived

from the Strickland mandate that "counsel has a duty to make

reasonable investigations or to make a reasonable decision that

makes particular investigations unnecessary." Strickland, 466

U.S. at 691. However, "trial counsel is not bound by an

inflexible constitutional command to interview every possible

witness. Instead, counsel [is] simply required to exercise

reasonable professional judgment in deciding whether to

interview [a witness]." Lewis v. Mazurkiewicz, 915 F.2d 106, 113

(3d Cir. 1990).

In order to successfully assert that "counsel was ineffective for failing to call a . . . witness to testify about [some matter, a petitioner] must establish both that his attorney's performance was objectively unreasonable and that, but for the deficient performance, there would have been a reasonable probability of a different outcome." Reinert v. Larkins, 379 F.3d 76, 94-5 (3d Cir.2004) (citing Strickland). In practice, therefore, "in order 'to succeed on a claim of ineffectiveness for failure to call a witness, it must be shown that: (1) the witness existed; (2) the witness was available; (3) counsel was informed of the existence of the witness or should otherwise have known of him/her; (4) the witness was prepared to cooperate and testify for [the petitioner] at trial; and (5) the absence of the testimony prejudiced [petitioner] so as to deny him a fair trial.'" Grundy v. Pennsylvania, 248 F. App'x 448, 453, n. 3 (3d Cir.2007) (quoting Commonwealth v. Gonzalez, 608 A.2d 528, 532 (Pa. Super. Ct. 1992)).

In his habeas memorandum, Lloyd states that he

> disagrees with the Superior Court which held that
> Petitioner failed to establish that the absence of
> this testimony denied him a fair trial. . . .  The
> prejudice from counsel's failure to call these
> witnesses and/or obtain the related records was
> significant.  These witnesses and documents would
> have established that Petitioner did not have a

> weapon on his person or in his vehicle.  While the
> Superior Court downplayed the significance of this
> missing evidence, it failed to take into
> consideration that there was no evidence that
> Petitioner stopped *anywhere* before arriving at the
> scene of the crime where he could have possibly
> obtained a weapon from after the police stopped him
> on the highway and searched his car.

(Pet. Mem. at 22.)  I recommend that this argument is baseless.

Most importantly, Lloyd's assertion that the state troopers'

testimony would have established that he could not possibly have

possessed a weapon at the time of the murder because he did not

make any other stops after the police search, fundamentally

misrepresents the trial testimony.  The Commonwealth established

that Lloyd in fact had an opportunity to obtain the murder

weapon, if he had not already been carrying it,[5] when he stopped

at Bryant Huff's house shortly before the murder, and went

inside leaving Wood in the vehicle.  (NT 6/15/04 at 112-13.)

Prior to that stop, and also after the police search, he also

stopped to pick up Wood, made the initial stop of Huff's house

when he found he wasn't at home, and spent time with Huff on the

street corner.  (NT 6/16/04 at 170-72, 174-75.)  Because the

---

[5] I note that Lloyd's argument assumes that he did not have the murder weapon prior to the police stop of Tyndale's vehicle.  However, nothing in the record establishes that **Lloyd** was searched by the troopers during the stop. He testified only that Tyndale's **vehicle** was searched, not that he, a passenger in the vehicle, was searched.  (NT 6/16/04 at 168-69.)

34

evidence of the vehicle search could not have categorically
eliminated the possibility that Lloyd possessed the murder
weapon prior to the shooting, the Superior Court conclusion,
that counsel's failure to call the state trooper to testify
about the search could not have altered the outcome of the
trial, did not unreasonably apply the <u>Strickland</u> standard.[6]

---

[6] In addition to this primary claim of trial counsel ineffectiveness on this
ground, Lloyd raises a derivative claim that PCRA counsel was ineffective for
failing to include an affidavit from the state trooper witnesses or a
certification related to the proposed testimony. This failure, he asserts,
prejudiced his attempt to demonstrate that trial counsel was ineffective.
(Pet. Mem. at 24.)

    The law governing habeas review of ineffectiveness of collateral review
counsel has recently been changed by the Supreme Court. <u>See Martinez v.
Ryan</u>, 132 S. Ct. 1309, 1320 (2012) (holding that "Where, under state law,
claims of ineffective assistance of trial counsel must be raised in an
initial-review collateral proceeding, a procedural default will not bar a
federal habeas court from hearing a substantial claim of ineffective
assistance at trial if, in the initial-review collateral proceeding, there
was no counsel or counsel in that proceeding was ineffective."). In so
holding, the Court recognized a "narrow exception" to the general rule that
attorney errors in collateral proceedings do not establish cause for a
procedural default. <u>Id.</u> at 1315. This exception applies only to claims of
ineffective assistance at trial which would otherwise be defaulted due to
attorney ineffectiveness in an "initial-review collateral proceeding," i.e., a
collateral proceeding "which provide[s] the first occasion to raise a claim of
ineffective assistance at trial." <u>Id.</u> In that situation, "[t]o overcome the
default, a prisoner must also demonstrate that the underlying
ineffective-assistance-of-trial-counsel claim is a substantial one, which is
to say the prisoner must demonstrate that the claim has some merit." <u>Id.</u> at
1318.

    The holding in <u>Martinez</u> does not apply to this claim of ineffective
assistance of PCRA counsel. Lloyd does not raise it in order to resurrect a
defaulted claim of trial counsel ineffectiveness; rather he seeks to assert a
direct claim of collateral counsel ineffectiveness as a basis of habeas
relief. This does not fall within the narrow exception recognized by
<u>Martinez</u>. It falls within the general rule that <u>Martinez</u> left intact,
barring separate habeas claims based on collateral counsel ineffectiveness.
Alternatively, because the underlying claim of trial counsel ineffectiveness
is patently meritless because the vehicle search evidence could not have
affected the outcome of the trial, the derivative claim of PCRA counsel

4. <u>Failure to Object to the Prosecutor's Closing
Argument Statement that Lloyd No Longer Enjoyed
the Presumption of Innocence</u>

Lloyd next asserts as a basis for habeas relief a claim he
exhausted on PCRA review that trial counsel was ineffective for
failing to object to the prosecutor's statement during her
closing argument that Lloyd was not entitled to the presumption
of innocence.  As I quoted in part above, the prosecutor told
the jury at the very end of her summation:

> But I submit to you, by his own words to his own
> friends, by his conduct, by him writing the letter
> by this photo, by his testimony.  *I submit to you
> that the presumption of innocence is no more*.  And
> I submit to you, when you go back in that room and
> you deliberate, you will come back in here and your
> verdict will be speaking the truth, because you
> will take those puzzle pieces and you will put them
> together, and why you put them together you will
> develop a picture, and the picture will be that
> this defendant, this man, this defendant is guilty
> of first degree murder.

(NT 6/17/04 at 104-05 (emphasis added).)  Lloyd argues that the
comment had the impact of forming in the jury's minds a fixed

---

ineffectiveness for failing to raise it is also meritless.  Even if PCRA
counsel had included an affidavit from the state trooper witnesses or a
certification related to the proposed testimony, it could not have
conclusively demonstrated that Lloyd did not possess the murder weapon prior
to the shooting.

bias and hostility toward him so that they could not weigh the
evidence or render a true verdict, and that the comment was not
reasonable advocacy; thus trial counsel was ineffective in
failing to raise an objection.  (Pet. Mem. at 26-27.)

The Superior Court rejected Lloyd's assertion that the
comment was improper and accordingly determined that counsel was
not deficient in failing to raise an objection:

> We do not find this statement improper on its own.
> See Commonwealth v. Chester, 526 Pa. 578, 587 A.2d
> 1367 (1991), *cert denied*, 502 U.S. 959, 112 S. Ct.
> 422, 116 L. Ed. 2d 442 (1991) (holding it is well
> settled law that the prosecutor is permitted wide
> latitude in making arguments to the jury).
> Moreover, supporting case law sets forth that a
> judge's instruction to a jury about the presumption
> of innocence offsets any prejudice that may exist
> from this potential issue. . . .  Because the
> prosecutor did not exceed the bounds of reasonable
> advocacy and Judge Savitt instructed the jury on
> the presumption of innocence, trial counsel cannot
> be deemed ineffective for failing to object on the
> basis of prosecutorial misconduct.

(Resp. Ex. C at 14-15 (citation and quotation of trial court's
jury instructions omitted).)  Nothing in this holding
unreasonably applied Supreme Court law on the substantive charge
of prosecutorial misconduct or the derivative claim of
ineffective assistance of counsel.

First, like the Superior Court here, the United States
Supreme Court has also held juries are almost invariably assumed
to have followed the court's instructions.  See Richardson v.
Marsh, 481 U.S. 200, 206 (1987) (collecting cases).  Thus, the
Superior Court's rationale was not contrary to, and reasonably
applied federal law in holding that the detailed and specific
instructions given by the trial court were more than adequate to
offset any prejudice arising from this potential issue.

Moreover, the conclusion that the prosecutor's statement
was not improper did not unreasonably apply Darden and Greer.
The Pennsylvania standard for prosecutorial misconduct, like
these Supreme Court cases, "places great emphasis on the effect
that improper prosecutorial remarks have upon the fairness of
the verdict."  Henry v. Horn, 218 F. Supp. 2d 671, 705 (E.D.Pa.
2002).  Read in context, the prosecutor's statement cannot be
deemed to have disturbed the fundamental fairness of Lloyd's
trial.  Her statement that "the presumption of innocence is no
more" was clearly an assertion that, based on the evidence the
Commonwealth presented, the jury would conclude during its
deliberations that the Commonwealth successfully rebutted the
presumption of innocence.  Her argument was rooted in the

evidence she presented and was not a statement of her personal opinion as to Petitioner's guilt.

Finally, even if the prosecutor's comment was improper, the Superior Court's conclusions that the jury instructions given by the trial judge sufficiently explained the presumption of innocence, and removed any taint caused by the prosecutor's statement, were not unreasonable. While Lloyd relies upon a decision from the District of Massachusetts to support his assertion that the prosecutor's statement was improper, I recommend that the cited holding in Pagano v. Allard, 219 F. Supp. 2d 26 (D. Mass. 2002) is clearly distinguishable.[7] In Pagano, the prosecutor had argued to the jury

> But *now* as we come to the end of this trial, the presumption of innocence, which I sometimes characterize as somebody wearing like a cloak, and that's how he's protected by wearing that cloak, but *now that cloak comes off*. And now, you people get to judge. You guys get to decide the facts in this case. For me this is where it gets good.

Id. at 33 (emphasis in original). The district court granted habeas relief holding

---

[7] It is also, obviously, not a decision of the United States Supreme Court, to which the AEDPA standard is only applicable.

There can be no doubt that the prosecutor's
statement relating to the presumption of innocence
was improper.  The presumption of innocence, which
is afforded to every criminal defendant brought to
trial in this country, does not "come off" during
the prosecutor's closing argument, but remains with
the defendant until the jury determines that the
government has proven each and every element of the
charge beyond a reasonable doubt.  See Delo v.
Lashley, 507 U.S. 272, 278, 113 S. Ct. 1222, 122
L.Ed.2d 620 (1993) ("Once the defendant has been
convicted fairly in the guilt phase of the trial,
the presumption of innocence disappears.").

Id.  In Pagano, however, the court found that the constitutional

error "so infected the trial with unfairness as to make the

resulting conviction a denial of due process," id. at 36

(quoting Donnelly, 416 U.S. at 643), specifically because

there were no measures taken by either the trial
court or the prosecutor to cure the infirmity
caused by the prosecutor's prejudicial statement.
No curative instruction was ever given to the jury,
and the trial court judge even failed to sustain
petitioner's objection and merely noted it, thereby
permitting the jury to receive the erroneous
impression that the prosecutor's inartful metaphor
regarding the loss of the "cloak" of innocence was
a correct statement of law.

Id.[8]  Here, the trial court fully and accurately cured whatever

error may have resulted from the prosecutor's statement when he

---

[8] An additional finding distinguishing Pagano is that the court's reliance
upon the fact that "the government's [sic] evidence against the petitioner,

charged the jury on the presumption of innocence. Thus, because
the underlying claim of impropriety had no merit, the Superior
Court's conclusion that counsel was not ineffective for failing
to object was a reasonable application of Strickland.

> 5. Failure to Preserve for Appellate Review that
>    the Trial Court erred in Refusing to Give
>    Requested "Mere Presence" Charge.

Next, Lloyd reasserts a claim he exhausted on PCRA review
that trial counsel was ineffective in failing to preserve for
appellate review a claim that the trial court erred in failing
to give defendant's requested "mere presence" charge to the
jury.  In adjudicating this claim the Superior Court recognized
that, while the law is clear that a defendant cannot be
convicted of a crime where the only evidence to connect him with
the crime is his mere presence at the scene, it did not follow
as a matter of state law that a jury must be instructed in every
case that mere presence is insufficient to convict.  Rather, it

---

while sufficient to sustain a conviction under ordinary circumstances, was
extremely weak.  The only direct evidence offered by the government [sic] was
a single eye-witness who was able to observe only the robber's eyes on
account of the mask and to hear his voice." Id.  Here, to the contrary, the
evidence produced against Lloyd, including the eye witness account of murder,
the threatening letters he sent to Wood to dissuade her from testifying, and
the photograph linking him to the type of weapon used in the killing, coupled
with the implausibility of his defense, was overwhelming.

held, where it appears the jury "is fully and adequately instructed on the elements of a crime, and where it appears that a charge on 'mere presence' is not essential to their understanding of the case, the trial court may refuse to issue a specific instruction on mere presence." (Resp. Ex. C at 16 (citations omitted).)  The Court determined that the trial judge defined the crimes charged in great detail, explaining the elements the Commonwealth was required to prove; thus a mere presence charge was not essential to the jury's understanding of the case since there was ample physical and testimonial evidence showing Lloyd's participation in the crimes.[9] (Id. at 17.)

I recommend that the Superior Court's determination that the failure to give a mere presence instruction was not error under state law is determinative on Lloyd's ineffective assistance of counsel claim.  See Estelle, 502 U.S. at 67-68. Because the underlying assertion of error is baseless, there can be no ineffective assistance of counsel claim premised on the failure to preserve the issue for appellate review.

### 6. Claims of PCRA Counsel Ineffectiveness

---

[9] While the Superior Court did not go on to specifically state that the lack of any underlying trial court error in refusing to give the requested instruction vitiated any ineffective assistance claim based upon the failure to preserve the issue, I recommend that such a holding necessarily follows.

Finally, Lloyd raises claims that PCRA counsel was ineffective in failing to raise, argue and preserve claims that trial/direct appeals counsel was ineffective for (1) failing to raise the trial court's improper admission of prior bad acts evidence; (2) failing to raise a claim that the prosecutor's opening statement expressed her personal belief that Lloyd was guilty; and (3) failing to call Antonio Pittman as a defense witness. As I noted above, the Supreme Court has recently changed the law to hold that a claim of ineffective assistance of collateral review counsel can be used as cause to excuse defaulted claims that trial counsel was ineffective. To do so, however, the petitioner must show that PCRA counsel was ineffective and that the underlying trial counsel ineffective assistance of counsel claim is substantial. Martinez, 132 S. Ct. at 1318. I recommend that Lloyd cannot show cause under Martinez to excuse his procedural default because the underlying ineffective assistance claims are not substantial.

a. The Prior Bad Acts Claim

The claim that trial counsel was ineffective for failing to object to the prosecutor's introduction of prior bad acts evidence is centered upon her questions to Brian Huff asking whether Lloyd was "normally" armed:

Q.  And did you know whether or not on that evening that you saw the defendant at 22nd and Diamond Street, do you know whether or not he had a gun on him?

A.  No, he ain't have no gun on him.

Q.  Do you recall whether or not he normally had a gun on him when you saw him?

A.  Do I know if he normally had a gun on him when I saw him?  He ain't have no gun.

Q.  I'm saying, this is somebody that you were cool with?

MR. CAPONE:   Objection, Your Honor.

THE COURT:   Overruled.  You don't have to repeat "somebody you were cool with."  To that extent, I sustain the objection.

BY THE COURT:

Q.  The question is, at previous times did the defendant have a gun on him?  Did you frequently or occasionally see him with a gun?

A.  I mean not — not — yeah.

Q.  Is the answer — I'm not asking you — is the answer —

A.  Have I ever seen him with a gun?

Q.  Yes.

A.  Yeah.

THE COURT:   Okay.  That's all.  You may proceed.

BY MS. NIXON:

Q. And, in fact, he normally had a gun?

A. No, not normally.

MR. CAPONE: Objection. Objection.

THE COURT: Yes. Well, he answered the question. He had seen him with a gun. He did not normally have a gun.

BY THE COURT:

Q. Is that what you're saying?

A. Exactly.

THE COURT: That's his response. You may proceed.

BY THE COURT:

Q. Is that your response? I'm not trying to put words in your mouth.

A. No. I'm saying she asked me if he had a gun that night or do he normally have a gun around like everywhere he go. No, he don't carry a gun everywhere he go.

(NT 6/16/04 at 41-43.) Lloyd argues that trial counsel was ineffective in failing to object to this line of inquiry because it sought to elicit inadmissible prior bad acts evidence, lacked relevance to the case for any other legitimate purpose, and was highly prejudicial given that a central issue in the case was whether or not he possessed a weapon.

45

I recommend that the issue of whether trial counsel was ineffective regarding this testimony is insubstantial. First, Huff's testimony could not have been overly prejudicial since it tended to benefit Lloyd. He unequivocally told the jury that he did not see Lloyd carrying a gun on the night of the shooting and denied that Lloyd normally carried a gun. His testimony that he had seen him carry a gun in the past was cumulative of the photographic evidence that clearly established that Lloyd had possessed a gun at the time the picture was made. Second, counsel in fact did object — apparently on the basis that the question had been asked and answered — when the prosecutor again asked if Lloyd normally carried a gun, and was sustained *sub silencio* since the trial court reiterated Huff's denial. Accordingly, because there was no actual prior bad acts testimony, I recommend that any assertion of trial counsel ineffective assistance is insubstantial.

b. Prosecutor's Statement of Personal Belief.

Next, Lloyd asserts that PCRA counsel was ineffective in failing to raise, argue and preserve a claim that trial/direct appeals counsel was ineffective for failing to raise a claim that the prosecutor's opening statement expressed her personal

belief that Lloyd was guilty.  At the conclusion of her opening

speech, the prosecutor stated:

> But the bottom line is this:  When you follow
> your oath and you apply the law, I suggest to you,
> humbly, ladies and gentlemen, that when you come
> back in as one, you will know what the complete
> picture is.  Your search for truth will be over and
> I suggest to you at that time you will see, **as I do
> now**, that this defendant, whatever you want to call
> him, Meat, Mr. Lloyd, he is guilty of murder in the
> first degree for intentionally taking the life of
> another human being.  Thank you.

(NT 6/14/04 at 66-67 (emphasis added).)  PCRA counsel filed a

statement with the PCRA court on April 2, 2009, setting forth

his reasons for not including a claim based upon this portion of

the opening statement:

> I have read the ADA's opening statement. . . .
> This counsel believes that it was a fair opening
> statement with the prosecutor 'suggesting' to the
> jury that, after they know what the complete
> picture was, the Defendant would be found guilty of
> murder in the first degree.  This counsel did not
> raise this as an issue because it simply was NOT an
> issue.  The prosecutor did not play to the fears of
> the jury, nor did she personally vouch for
> witnesses, or give her personal opinion.  It was a
> fairly standard opening statement and it did not
> create an issue."

(Resp. Ex. G at 2-3.)

Vouching, an assurance by the prosecutor of the strength of her case or the credibility of her witnesses through personal knowledge or by other information outside of the testimony before the jury, constitutes misconduct.  See, e.g., United States v. Lawn, 355 U.S. 339, 359 n. 15 (1958); United States v. Molina-Guevara, 96 F.3d 698, 704 (3d Cir. 1996).  Improperly asserting a personal belief that the defendant is guilty raises two concerns: 1) such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and 2) the prosecutor's opinion carries with it the imprimatur of the Commonwealth and may induce the jury to trust the Commonwealth's judgment rather than its own view of the evidence.  See United States v. Young, 470 U.S. 1, 18 (1985) (vouching for credibility of government witness).  The United States Court of Appeals for the Third Circuit has held that, in order to find misconduct, "[t]he defendant must be able to identify as the basis for that comment an explicit or implicit reference to either the personal knowledge of the prosecuting attorney or information not contained in the record."  United States v. Walker, 155 F.3d 180, 187 (3d Cir. 1998) (citing Lawn, 355 U.S. at 339 n. 15).

On habeas review, however, prosecutorial misconduct such as vouching does not rise to the level of a federal due process violation unless it is so prejudicial that it affects the fundamental fairness of the trial. <u>Lam v. Kelcher</u>, 304 F.3d 256, 271-72 (3d Cir. 2002). In determining prejudice, I must consider the scope of the objectionable comments and their relationship to the entire proceeding, the ameliorative effect of any curative instructions given, and the strength of the evidence supporting the defendant's conviction. <u>United States v. Zehrbach</u>, 47 F.3d 1252, 1265 (3d Cir. 1995).

I recommend that the prosecutor's comment, isolated in her opening speech and not thereafter repeated, was not so prejudicial as to have affected the fundamental fairness of Lloyd's trial. I recommend too that counsel's explanation for why he did not consider the statement sufficiently suggestive that it warranted inclusion as an issue in the state petition, was a reasonable exercise of professional discretion.

Lloyd has entirely failed to meet his burden to identify as the basis for the prosecutor's comment an explicit or implicit reference to either her personal knowledge or information not contained in the record. On the contrary, what is explicit in her statement is that the jury would find Lloyd guilty **after it**

49

**heard all of the evidence**, not because she expressed a personal

belief that he was guilty.  Accordingly, because the underlying

claim that the statement was improper is not substantial, I

recommend that the derivative claim of trial counsel ineffective

assistance is also insubstantial.

### c.  Failing to call Antonio Pittman.

Finally, Lloyd asserts that PCRA counsel was ineffective

for failing to raise on PCRA review that trial counsel was

ineffective for failing to call Antonio Pittman.  He asserts his

belief that, if called at trial, Pittman would have recanted the

inculpatory statement he made to the police.  PCRA counsel did

not address this issue in the statement of reasons he filed with

the PCRA court.  The Commonwealth asserts that the failure to

mention this issue indicates that Lloyd never asked him to

include it in the PCRA petition.  (See Docket Entry 10 at pg.

4.)  Because this issue is reviewed under the Martinez

exception, there is no state court factual record upon which I

may rely in making my recommendation.  I must note, however, the

obvious deficiency that Lloyd has provided no support for his

"belief" that Pittman would have recanted his inculpatory

statement.  To excuse the procedural default arising from the

failure of collateral review counsel to raise the underlying

ineffective assistance of counsel claim, <u>Martinez</u> places an
affirmative burden upon habeas petitioners to show that the
underlying claim has some merit.  132 S. Ct. at 1318.  While
Lloyd asserts that <u>Martinez</u> applies to PCRA counsel's failure,
he has not even attempted to satisfy this burden with any
threshold evidentiary support, i.e., an affidavit from Pittman
supporting Lloyd's "belief," or an affidavit from PCRA counsel
that Lloyd ever asked that he present the issue.  Accordingly, I
recommend that this claim be dismissed.

For all of these reasons, I make the following:

**<u>RECOMMENDATION</u>**

AND NOW, this 13th day of February, 2013, IT IS RESPECTFULLY RECOMMENDED that the instant Petition for Writ of Habeas Corpus should be DISMISSED WITH PREJUDICE and without an evidentiary hearing.  I further RECOMMEND that there is no probable cause to issue a certificate of appealability.

The Petitioner may file objections to this Report and Recommendation. See Local Civ. Rule 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT

/s/ Arnold C. Rapoport


ARNOLD C. RAPOPORT
UNITED STATES MAGISTRATE JUDGE